Case number 24-328 Town of Newburgh, New York v. Newburgh EOM LLC Good morning, your honors. If it pleases the court, Todd Soloway from Pryor-Cashman, along with my colleagues Todd Marcus and Jacob Orgel for the appellant, Newburgh EOM. Your honors, having been pretextually sued under local zoning laws, Crossroads exercised its right under 28 U.S.C. 1443 to remove this case to the federal court and did so properly, showing in the amended notice of removal that it is protected by the Civil Rights Act of 1964 in particular, sections 201A and 203C, and second, that it is both denied and cannot enforce that right in state court, in particular by reason of Newburgh's use of facially neutral zoning laws to punish or to attempt to punish Crossroads for letting out rooms in its hotel to migrants. Your honors, the removal petition here meets both prongs, and it is clearly on all fours and consistent with the seminal cases that arose out of the Civil Rights era in Ham v. Rockhill and in Georgia v. Rachel. Your honors, the lower court, the district court made, would submit multiple reversible errors here. Notably, right off the bat, the court relied upon, the amended notice of removal was clear that it was based upon 1443, and the court's analysis was only on 1441. In fact, not only did the court below fail to accept the allegations of the notice of removal as true, which it is required to do under 1443, it did the opposite, and accepted the allegations of the complaint as true. But didn't the court recognize that on page 9 of the court's denial of the motion first day? Didn't the court say, look, I recognize I applied the wrong standard, but it doesn't matter, because that's not what the court based its decision on, to remand the case. So why does that matter here? Why should it matter? You know, I understand it may have been the wrong standard, but the court acknowledged that and said, now that I recognize I applied the wrong standard, it still doesn't matter. Well, I would say two things. First of all, the court did not recognize that she applied the wrong standard. She claimed that she applied the proper standard, but just didn't tell us in the decision on remand. I would submit to you that that stay order only emphasizes that the only order that's up on appeal right now should be reversed and remanded. Didn't the court acknowledge that in the denial of the subsequent motion to dismiss, that acknowledged that it applied the wrong standard or a different standard and said it doesn't matter? I think two things. I think number one, Your Honor. Are you saying I'm misreading the record? Your Honor, I don't think that's even in the record on this motion, on this appeal. That was a separate decision that was issued on the stay motion. And I just want to point out, Your Honor, with respect to what the judge said in that case, in the stay motion. She then went to the notice of removal and stated that the notice of removal inadequately pled the elements of 1443. And I have to take great issue with that. The notice of removal in this case pleads even more facts than were present in the Supreme Court case in Rachel. The notice of removal clearly states that the city of New York was going to move migrants up to Orange County. That when Orange County and Newburgh got wind of it, they passed an executive order that expressly stated there are to be no migrants in any hotels in the county of Orange, period. And then followed- White migrants and black migrants. White migrants and black migrants. Well, the allegation in the notice of petition, in the notice of removal is clear that the overwhelming majority of the migrants are minorities. And it's also 1443 and 201A also apply based upon national origin. And, Your Honors, I want to be clear here. I represent the owners of the hotels. They are being sued to punish or attempt to punish our clients for accepting migrants in their hotels. That is the goal of the underlying lawsuit. For how long? For four months? For any period of time. But for whatever period of time, the purpose of them being sued, as stated in the executive order, is to prevent migrants from coming to the hotel. And the standard, to the point that Your Honor is raising, the standard in analyzing these cases in Rachel, in the Supreme Court case in Rachel, is that if they can- this case should, in our opinion, should be remanded for a hearing. If it is determined at that hearing that there was discriminatory motive in bringing the underlying case, then and only then the case would be dismissed. But to your point of how long were they going to be there, what the courts have determined is if the case is being brought for discriminatory purposes, you don't get there. That is what the Supreme Court held in Ham. That is what the Supreme Court held in Rachel. In Rachel, it's a very analogous case. In Rachel, black men went to a restaurant to be served food. They were denied and asked to leave. And they were sued under a facially- Denied on the basis of them being black men. In that case, yes. In that case, I mean, doesn't that matter? It's a Title II claim. It's a Title II claim is what matters. Title II, Section 201A, and 203C are the critical points here. You didn't raise Title II below, correct? Yes, we did. You only raised it on appeal. No, no. The Title II is expressly laid out in the amended notice of removal and in the original notice of removal. Let me ask you, in line with this line of questioning, didn't the district court say there was no need for- that the district court would not conduct an evidentiary hearing because the nature of the allegations were conclusory in the complaint? And that you wouldn't get an evidentiary hearing unless you had specific allegations. In the decision- Is that wrong? In the decision on the stay, not in the decision on the remand order, the court stated that she found that the allegations in the notice of removal were conclusory. Here's what the allegations were in this case, and I'm going to compare them to Rachel for you. Doesn't the motion- you keep trying to stay away from the motion to stay, and I sort of get it because the court acknowledged some of its errors in it. I'm looking at page nine where the court says the hotel is correct, that I should not have in the portion of the remand order in which I summarized the town's state court complaint, used the language customarily used for motions to dismiss, indicating that I accepted those allegations as true for purposes of the motion. I should simply have said that I was summarizing the town's complaint, but my decision did not turn on whether or not the town's allegations were true. Rather, I did what the hotel says I should have done, and treated an or as the operative pleading assessing its plausibility. The court goes on. In that same decision, the court says, look, your complaint is conclusory. Therefore, there's not a need for an evidentiary hearing. And I get your point that that's on the motion to stay, but the court's decision on the motion to stay looks at the underlying merits of the case. So you can't divorce them. It is part of our record. It's part of what the court decided, especially when the court is referring back to its earlier decision. So it would be helpful if you could address that. Sure. Let me address it as if the court below looked at the notice of removal and went through the allegations, and then I would like to compare them to the Supreme Court in Rachel. The allegations of the amended notice of removal were that in response to the hotel's accommodations of refugees, the town of Newburgh took the following retaliatory discriminatory actions. On or about November 12th, Newburgh filed the summons and complaint in the Supreme Court of the State of New York. That's at paragraph 11. We allege that the county of Orange, which is the superior, or if in the hierarchy of the municipalities, is the county in which Newburgh sits. I will tell you, Your Honors, that at his deposition, the county executive, which is subsequent to the notice of removal here, admitted that he conferred with the town of Newburgh in preparing the executive order. I would add further, Your Honor, that the executive order, we recite how that was the dog whistle to the town of Newburgh, that we're not going to allow any migrants. They made reference to use of zoning laws that allegedly migrants were going to become, quote, homeless because they would be barred based on zoning laws. What did the town of Newburgh do? The day after the executive order is issued, they call a, quote, emergency meeting. They order and conduct a sham inspection of the hotel. Why are those allegations in the complaint? Those are in the amended notice of removal, absolutely. They are absolutely. And I will say this, Your Honor. There is a statement in the state order, which we take great issue with. The court even has a tagline, none of these are in the amended notice of removal. The chart that I'm reading you from is based upon her saying that. We took it, I said, we went back and said, how could that possibly be the finding? The amended notice of removal contains all of the things I just told you. There are certain items, we even have a sentence in the amended notice of removal that says that municipal officials made publicly inflammatory racial comments. Now, did we list every one of them? This is a pleading. Under the New Haven Firefighters case, our amended notice of removal more than states a claim here. Let me just ask you, and I know I've asked you quite a few questions, but I think this gets to the core of why this case is here. The issue is whether the case should be litigated in the state court system or litigated in the district court. And my question is, why is it that the civil rights claims would be better litigated in the district court versus the state court? I mean, that's really the core of this, right? Thank you for asking that question. The state court is not on trial. Under 1443, if our client meets the prongs of the test under 1443, which works in critical, this is a critical case. It works in concert with 201A and 203C, which bars any punishment or attempt to punish any person who is exercising their Title II rights. And 1443 works in concert with Title II. If you meet those prongs in your pleading, you are entitled to be in federal court. The exclusive jurisdiction, so you're relying on Title II gives exclusive jurisdiction? There's a separate issue about exclusive jurisdiction, and the first point is if you meet those prongs, you're in. Separately, we also have argued in our papers that Title II is exclusively in federal jurisdiction. That is if you have to go further than the first point. I really want to address what you asked, though, because here's what the Fifth Circuit very eloquently said about this exact point in Rachel. This is the circuit court which reversed the remand and said it should be set down for a hearing, and then the U.S. Supreme Court affirmed that. The court wrote, Congress, while having carved out rights and immunities in the area of civil rights, has provided a jurisdictional basis for efficiently and appropriately protecting those rights and immunities in federal court. The provision of this protective forum is not limited by the state's obligation under the supremacy clause to protect federally guaranteed rights, civil rights as zealously would a federal court. That there is such an obligation on the state tribunals is true and vital, but it is irrelevant here. The question, the practical question, and the judge cited at page 14 of the decision, the question here of, oh, golly gee, can't the state court just do this? So I'm very sympathetic to these arguments. I'm very sympathetic to these arguments, and you're citing the great Fifth Circuit of the 1960s. But was the underlying order that the plaintiffs in Rachel were resisting was a patently illegal order. Is that correct? The statute that was being enforced there was a facially neutral trespass statute. But that had been deemed by prior case law to have effectively been illegal. Your Honor, I have never seen a case that said that, and what happened in Rachel is just what I described before. They were sued for misdemeanor trespass under a facially neutral trespass statute. And all of these cases involve facially neutral statutes. Did you, maybe I wasn't listening, mention the Greenwood, Mississippi case? Was it? It was Greenwood. I don't recall whether we cited that case in particular, Your Honor, but I just want to add- For reasons stated, they went the other way. That's Peacock. Yes, Peacock, sure. Your Honor, Peacock went the other way for the exact reasons I said about 203C is the key here. Peacock had a First Amendment claim. So you failed the test on removal on that claim because it was not viewed as a statute protecting equal civil rights. That was the first claim was First Amendment. The other two claims, which were 1971, which is voter rights, and 1981, which was contract claims, failed the second part of the test, which is in 203C, you have the anti-punishment provision, which is the unique nature of the Title II claims. Title II claims fit this narrow lane that get you into federal court under 1443. And the Peacock case failed on First Amendment because it wasn't a statute for protection of equal civil rights, and failed the test for removal under 1443, the second prong, because it didn't have the anti-punishment provision of 203C under Title II. And that's the critical distinction. Like Judge Loyer, I think I'm sympathetic to your request to have your rights vindicated or try to prove your case in the federal court system. I understand that. So I guess your argument in response to my question is the state courts aren't necessarily worse than the federal courts. It's just because there's a statute and the statute says we're entitled to be in federal court. Is that basically it? You're not saying you can't equally protect the civil rights of your clients by going to state court? Two things. If we meet the test under 1443, my client is absolutely entitled to be in federal court, irrespective of whatever anyone thinks about the state court. Part two is that we have put in, and we have argued this, that Title II is not available. And that question is muddy below, Your Honor, as to whether Title II is even available in state court. And I would certainly, the First Circuit- On that issue, the exclusive jurisdiction argument you didn't raise below with the district court, am I correct? I think we're being whipsawed on that. I want to tell you why. You're being whipsawed. It's a factual question. Did you raise that argument below? They didn't even argue 1443 below. So we didn't raise it because it wasn't even argued. And then we're being accused of failing to preserve it for appeal. Regardless of whether, why or not you didn't, the point is you didn't raise it. It wasn't raised by anybody below. They didn't move on 1443 below. Below, they made a motion to remand the case under 1441 and never mentioned 1443. And then, dare I say- And your argument is premised in part on the view that Title II gives Crossroads the right to violate Newburgh's municipal and building construction code. Is that right? I would just say it differently, Your Honor. What the courts- Take my question. Sure. The answer is the behaviors that are covered by Title II, rights to public accommodations, to use the exact words of Ham and of Rachel, are immunized from punishment. And the concept of these statutes, which is why this is so critical, is Congress has made the determination that if there is discriminatory purpose- This would be determined at the hearing. This would be determined at the hearing, where we would be able to present evidence to show that the case below was brought for discriminatory purposes. And at the hearing, if they prove that it wasn't, then we would be sent back to state court. We'll have it from the other side, and then you preserve some time for rebuttal. Okay, thank you for your time, Your Honor. I appreciate it. Good morning, Your Honor. May it please the court. My name is Nick Berwick. I'm here with Jeff Sherwin. We're from McVean-Lewis, Sherwin-McDermott. We represent the town of Newburgh. I'd like to begin where Mr. Soloway began, with the facts and the amended notice of removal. It's very clear here that the facts that are being alleged are conclusory. The amended notice of removal relies solely on statements from the executive order that was issued by the county, and statements from the county executives. To clarify, the deposition testimony is not in the record, and this is our first hearing of this deposition testimony. It's not in the record on appeal at all. The amended notice of removal argues that, as Mr. Soloway said, this is a punishment, and that the executive order mandates that no migrants be allowed to have housing. The town on the spot in the Supreme Court agreed to a TRO that allowed 186 migrants to reside in the hotels. If their allegation is that the executive order mandated nobody is allowed to enter, it's simply not true. These asylum seekers have been in the hotel for over a year now, to the point that the Title II. What more would the amended, in your view, in the town's view, I guess the city's view, what more would the amended notice of removal have needed to say in order to effectuate a 1443 removal? Sure, Judge. They would have to allege facts that are more than merely conclusory facts. Well, I know that. What more? Right, Judge. They've cited, like I said, statements from the county executives. There's no statements from the town. The town has been on record saying we're welcoming everybody into the town. Anybody can come here for code-compliant housing. If there's some record of Mr. Pequodio, the town executive, saying, you know, I don't want to use inflammatory language, with some sort of inflammatory language, certainly that would bolster their case. There is no such language here. There's nothing more that they can say, and they could have said in the amended notice of removal, that is true. Is there a way in which an amended notice of removal could, even without reference to specific statements by— I see your friend on the other side is having a hard time hearing me. Myself as well, Judge. Sorry. Is there a way in which a notice of removal, without reference to specific statements by the town or by the municipality in this case, could effectuate a 1443 removal? In other words, by referring, say, to just statistical information about who is allowed an accommodation and who is not. I don't know if it could, Judge, and to that point— Well, that's a problem. So what you're asking us—well, maybe you're going to get to this, but what you're asking us to do is to, in effect, suggest that a 1443 removal in this context can only rest on explicit statements of a town official or a city official. And if you don't have that, and you have a facially neutral code, then that's enough. And that, I'm not sure, necessarily explains cases like Rachel. Judge, to that point, I would refer back to the fact that the town has agreed and is continuing to agree to extend the TRO that allows people of any race, religion, creed to reside in the hotel until the preliminary injunction that the town will file is decided. I appreciate that. But there is a structural difference—forget the practical difference—between being in federal court and state court. Right. So that's why these removal issues are very important. So set aside the TRO and the practical consequence, why can't this be—I guess you're resting on the argument that the notice of removal was not sufficiently concrete in terms of the facts it provided. That's ultimately it. That's it. Correct, Judge. And I think if you refer to the complaint, the executive order that they rely primarily on was mentioned in one single paragraph of the complaint that they were moving from, only in the background procedural history portion. There's no other indication that the town is looking to vindicate this executive order or to punish anybody over this order. It simply is not found in the record or in the complaint. I would like to address—go ahead, Judge. Where is the harm in the district court holding a hearing to determine whether, in fact, this case should go to state court or remain in the district court? What's the harm in that to your client? That's a great question, Judge, not one that I had actually considered, but I think there's no precedent to hold such a hearing. All the cases referred to by the hotel predate Iqbal and Twombly, which have a different standard now of plausible, not just possible. So in the cases cited by the hotel, primarily those cases were where the allegations on the removal petition had to be accepted as true, end of story, and the hearings were necessary to determine whether the rights could be vindicated in state court or not. That's not the case here. These allegations don't rise to the level of plausible under that standard, which— Well, I understand that. Yeah. I understand that argument. But if your claim is, look, these aren't even plausible, they're conclusory, well, then let's see in a hearing whether, in fact, they have more to back up. Judge, I— And, you know, where's the harm? I think it lends itself, Judge, and I don't mean to insult anybody with this, but it lends itself towards a fishing expedition. If there has been nothing alleged and they have not shown a plausible—reached this plausible level, then it really is just that, Judge. And I'd like to segue, Judge, to the issue raised by Mr. Soloway about whether or not the court properly considered the amended notice of removal rather than the summons complaint. To be very clear, the analysis of the summons and complaint is very limited below. It's for the background and procedural aspects, the background history. The court turns to the amended notice of removal for its entire analysis, and as Your Honor mentioned earlier, she says, I treated this as the operative pleading. The truth of the allegations in the summons complaint did not—was not determinative in this issue. Second, the court is allowed to use or refer to or consider pleadings outside of the amended notice of removal when there's questions of facts of removal where jurisdictional facts are challenged. That's United Food. That's 30 F 298. This is Second Circuit case. So it wasn't improper for her to consider the summons complaint in any event. So I don't think that it's a reversible error just because she refers to it and then she turns her analysis to focus on the amended notice of removal, which she treats in a footnote. She kind of breaks it down brick by brick, calling it misleading. The assertions are disingenuous and that they don't rise to the level of even coming close to plausible. Let me ask you sort of a more direct question. Sure. I think from the—just so that we understand the context of this and the scope of the argument. The only reason that the town of Newburgh brought the state proceeding was to prevent crossroads from providing accommodations to asylum seekers because of their national origin. All right. If—hypothetically. Understood, Judge. Would that be a denial of—would that deny crossroads its rights under Title II? Yes, Judge. They properly raise Title II under the first prong as that's a right arising for equal rights. If that was the case, and obviously it's our position that it's not the case, then there would be grounds for that, Judge. But that's simply not the case here. It's nothing that's even, like I have been referring to, plausible under the pleadings in the amended notice of removal, which relies solely on actions taken by the county, not the town. Your Honors, unless there are further questions, my time is running low. I'd just like to conclude by saying we appreciate the opportunity to be heard today, and we ask that the court affirm the district court and remand this case to the state court. So the current status of things is what? There was an answer in the state court about maybe 20 days ago, 30 days ago, Judge, and we filed an amended notice—an amended complaint adding the second hotel, which we had not had in the first complaint. Thank you, Justice. A couple of quick points. In Mahaney, the case cited in our briefs, Your Honor, this court, Mahaney against Nassau County, found in discrimination cases that the evidence is always circumstantial, because the party alleged to have been discriminating is never going to jump up and down and say I'm discriminating. And the New Haven Firefighters case, which dealt with these issues, specifically went outside of the record on the notice of removal to find that there was sufficient evidence surrounding the issues there. They looked to affidavits elsewhere in the case and found that there was sufficient allegations. And the court specifically went on to say to the extent that you're claiming that you didn't retaliate and you weren't retaliatory in the case you brought below, that's not for today. The question today is did you suffice under 1443.1. And I just want to lay out, Your Honor, to the extent that we do allege in the notice of removal that there were inflammatory statements made. And in our brief at pages 8 and 9, we lay out and we ask the court to take judicial notice of inflammatory statements by the town supervisor of Newburgh. It's not conjecture. These are publicly available and everyone can watch them for themselves. We didn't make it up. And I just have, I want to part on one last point to make from the remand order. In an attempt to distinguish Rachel, the court below said, and this is on page 11 to 12, that essentially she said that Rachel, the court found that the mere fact of the removing defendants being subject to state prosecution amounted to a denial of rights in the state because there was a federal law prohibiting such prosecutions. And then she says, but there is no federal law prohibiting municipalities from enforcing building and zoning codes. The town's complaint seeks relief under its facially neutral zoning laws. Your Honor, the law at issue in this case is the exact same one as in Rachel. It's Title II. That's the law that barred the prosecutions in Rachel and that's the law that bars the prosecutions here. And that's why our client meets the standard under 1443 and is entitled to a hearing to determine if the commencement of the litigation was designed to put a chill on our client to prevent migrants from coming to Newburgh and Orange County, as they said expressly in the executive order. I thank you for your time unless you have any questions. Thank you very much. We'll reserve the decision.